**HODGSON RUSS LLP**
1540 Broadway
New York, NY 10036
212.751.4300
S. Robert Schrager (RS0952)
Mark A. Harmon (MH 9126)
*Attorneys for Defendant Utix Group, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re*: | |
| **HOWARD P. EFFRON,** | Case No. 05-46742 (PCB) |
| *Debtor* | (Chapter 7) |
| **ROBERT L. GELTZER,  as Chapter 7 Trustee of Howard P. Effron,** | |
| *Plaintiff,* | Adversary Proc. No. 07-01292 (PCB) |
| –against– | |
| **UTIX GROUP, INC.,** | |
| *Defendant.* | |

## MOTION OF DEFENDANT UTIX GROUP, INC. FOR AN ORDER WITHDRAWING THE BANKRUPTCY REFERENCE PURSUANT TO 28 U.S.C. § 157(D) WITH RESPECT TO THE ADVERSARY PROCEEDING

Defendant Utix Group, Inc.  ("Utix"), by its attorneys, Hodgson Russ LLP, for its motion,

pursuant to Rule 5011 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

seeking an order withdrawing the Order of Reference of the above-captioned adversary

proceeding, states as follows:

1.      As is shown herein, and the accompanying Memorandum of Law, the motion of Utix to withdraw the reference to the Bankruptcy Court should be granted on the ground that Utix is entitled to a jury trial by an Article III judge on the issues raised in the adversary proceeding and Utix does not consent to a jury trial before the bankruptcy judge.

2.      Plaintiff, Robert L. Geltzer, Chapter 7 trustee in this proceeding (the "Trustee"), has commenced an adversary proceeding against Utix seeking either (a) the turnover of funds allegedly due to Howard P. Effron (the "Debtor") or, alternatively, (b) a judgment against Utix for breach of contract.  (Complaint, ¶1; a copy of the Complaint is annexed hereto as Exhibit A).

3.      The Complaint alleges that Utix failed to pay certain commissions and consulting fees claimed to be owed to the Debtor (Complaint, ¶¶ 15 and 20).

4.      The Complaint demands either an order that Utix turn over these payments pursuant to Section 542 (b) of the Bankruptcy Code (Complaint, Counts One and Two) or, alternatively, pursuant to state law, a judgment awarding damages for breach of contract (Complaint, Counts Three and Four).

5.      Pursuant to 28 U.S.C. § 157(d), the District Court has discretion to withdraw the Order of Reference of the Counts seeking a turn over of monies belonging to the Estate.

6.      Because the state law claims are legal, as opposed to equitable claims, Utix is entitled to a jury trial with respect to these claims seeking monetary judgments.

7.      Utix has submitted its demand for a jury trial (A copy of the Answer is annexed hereto as Exhibit B).  The Bankruptcy Court, pursuant to reasons set forth in the

2

accompanying Memorandum of Law, does not have authority to conduct a jury trial with respect to those counts where a jury trial is demanded.

        8.     Just cause exists to withdraw the Order of Reference as the Bankruptcy Court does not have the authority to preside over a trial of the state law Counts.

        9.     There is just cause to withdraw the Order of Reference because such a withdrawal would promote the economical use of the parties and Court's resources.

Pursuant to the Motion and the Memorandum of Law submitted in support of this motion, Utix respectfully requests that the Order of Reference in this action be withdrawn.

Dated: March 2, 2007
      New York, New York

        __s/S. Robert Schrager_____
        S. Robert Schrager (RS 0952)
        Mark A. Harmon (MH 9126)
        **HODGSON RUSS LLP**
        1540 Broadway
        New York, NY 10036
        212.751.4300

3

BRYAN CAVE LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 541-2000
Robert A. Wolf (RW-3419)
Benson V. Martin (BM-8897)
*General Counsel for Plaintiff Robert L. Geltzer, as*
*Chapter 7 Trustee of Howard P. Effron*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - x
In re:                      : **Chapter 7**

    HOWARD P. EFFRON,       : **Case No. 05-46742 (PCB)**

            Debtor.      :

- - - - - - - - - - - - - - - - - - - - - - - x
ROBERT L. GELTZER, as Chapter 7   : **Adversary Proc. No.** 07-01292 (PCB)
Trustee of HOWARD P. EFFRON,

           Plaintiff,    :

      v.             : **COMPLAINT**

UTIX GROUP, INC.,      :

           Defendant.   :

- - - - - - - - - - - - - - - - - - - - - - - x

        Plaintiff Robert L. Geltzer, as Chapter 7 Trustee (the "Trustee") of the debtor,

Howard P. Effron (the "Debtor"), by his General Counsel, Bryan Cave LLP, brings this

Complaint against defendant Utix Group, Inc. ("Utix" or "Defendant") and alleges as follows:

## INTRODUCTORY STATEMENT

        1.    This adversary proceeding arises from Defendant's nonpayment of funds

that rightfully belong to the Debtor's estate. By the instant adversary proceeding, Plaintiff

Trustee seeks: (i) turnover of those funds pursuant to §542 of the United States Bankruptcy

C046038/0197755/1357653.5

Code (the "Bankruptcy Code"); or (ii) alternatively, a judgment against the Defendant for breach of contract.

## JURISDICTION AND VENUE

2.      The United States District Court for the Southern District of New York has jurisdiction over this adversary proceeding under 28 U.S.C. §1334. By virtue of 28 U.S.C. § 157(a) and the Order dated July 10, 1984 of District Court Judge Robert J. Ward of the United States District Court for the Southern District of New York, this adversary proceeding is automatically referred to the United States District Court for the Southern District of New York.

3.      This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (E).

4.      The statutory bases for the relief sought herein are Sections 541 and 542 of the Bankruptcy Code, and applicable New York State law.

5.      Venue of this Chapter 7 case and of this adversary proceeding in this district is proper pursuant to 28 U.S.C. §§1408 and 1409.

## THE PARTIES

6.      The Trustee is a resident of the State of New York and is a licensed New York attorney maintaining an office at 1556 Third Avenue, Suite 505, New York, New York 10128.

7.      Upon information and belief, the Debtor is a New York resident residing at 123 East 54th Street, Apt. 4D, New York, New York 10022.

8.      Upon information and belief, Defendant Utix is a domestic corporation, formerly known as Corporate Sports Incentives, Inc. doing and/or transacting business in New York State, with a principal place of business located at 7 New England Park, Suite 610, Burlington, Massachusetts 01803.

2

02/06/2007 09:08 FAX  7812703280                    UTIX                                    ☑ 007/024

9.     On or about October 14, 2005, the Debtor filed a voluntary petition for

relief under Chapter 7 (the "Chapter 7 Petition") of the United States Code, 11 U.S.C. §§101 et

seq. (the "Bankruptcy Code").

10.    On or about November 2, 2005, the Trustee was appointed by the Office

of the United States Trustee as interim trustee of the Debtor's estate and thereafter became

permanent Trustee pursuant to § 702(d) of the United States Bankruptcy Code and by operation

of law, and is serving as such.

## FACTS

### First Agreement

11.    Upon information and belief, on or about April 25, 2003, the Debtor and

Corporate Sports Incentives, Inc., an entity now known as Defendant Utix, entered into a valid

and enforceable agreement in which the Debtor was to serve as a consultant and liason by

introducing potential investors to the Defendant (the "First Agreement," a copy of which is

annexed as Exhibit A).

12.    Upon information and belief, the First Agreement provided that the Debtor

would be paid a retainer of $20,000 and a commission of ten percent (10%) of all capital (net any

portion of the retainer paid) that was raised for the Defendant through investors.  Upon

information and belief, Defendant paid the Debtor the $20,000 retainer under the terms of the

First Agreement.

13.    Upon information and belief, on or about June 15, 2003, the Debtor

successfully raised five million dollars ($5,000,000) of capital for the Defendant by introducing

the investor Gravitas LLC to the Defendant ("Gravitas Investment").  Pursuant to the terms of

the First Agreement, the Defendant owes the Debtor a ten percent commission (10%) of this

C046038/0197755/1357657.5

02/06/2007 TUE 09:27 [TX/RX NO 6078] ☑ 007

$5,000,000 of capital that the Debtor raised, i.e., a commission totaling five hundred thousand dollars ($500,000) (the "Commission").

14.   Upon information and belief, as an incentive for the Debtor to do additional work with Utix, the Defendant waived the $20,000 retainer reduction from any commission owed under the First Agreement.  *See* Exhibit B.  As a result, the $500,000 Commission owed to the Debtor was not to be reduced by the $20,000 retainer that had been previously paid.

15.   Upon information and belief, Defendant never paid the Debtor the $500,000 owed to him as the Commission respecting the Gravitas Investment.

**Second Agreement**

16.   Upon information and belief, on or about June 1, 2005, the Debtor entered into a valid and enforceable agreement with Defendant under which the Debtor was to serve as a financial advisor to the Defendant.  (the "Second Agreement").  *See* Exhibit C.

17.   Upon information and belief, the Second Agreement provided, that Defendant would pay, *inter alia*, the Debtor one hundred ninety eight thousand dollars ($198,000) over a three-year period to serve as a financial advisor regardless of whether the Debtor successfully raised capital.  Upon information and belief, this agreement provided the $198,000 would be payable in thirty-six equal monthly installments of five thousand five hundred dollars ($5,500) each.  Upon information and belief, this agreement also provided that "[i]f any consideration due to [the Debtor] is not fully paid or transferred when due, [Utix] agrees to pay all costs of collection, including but not limited to attorneys' fees and interest on the obligation, whether collected by suit or otherwise."  Upon information and belief, this agreement further provided that "[t]he Engagement Retainer, Monthly Retainer, and other cash

*[handwritten margin note: Ex B says retainer still would not ...]*

C046038/0197755/1357653.5                                4

*[handwritten note: 2° Agrl w/ a company, not Effron]*

fees and stock consideration are not negotiable and are not subject to any reduction, set-off,

counterclaim, or refund for any reason or matter whatsoever." Upon information and belief,

upon the execution of the Second Agreement, the Debtor started to perform duties under the

terms of this agreement.

18.     Upon information and belief, on or about July 1, 2005, while serving as a

financial advisor under the Second Agreement, the Debtor introduced the potential investor

Sunrise, Inc. ("Sunrise") to the Defendant. Upon information and belief, although Defendant

pledged to accept $7,000,000 in capital from Sunrise, the Defendant subsequently canceled its

commitment and did not execute an investment agreement with Sunrise.

19.     Upon information and belief, on or about August 1, 2005, Defendant had

not paid the Debtor any fees for the Debtor's services performed under the terms of the Second

Agreement. Upon information and belief, on that date, the Debtor called the Defendant and

demanded his unpaid fees. Upon information and belief, at that time, Utix purported to terminate

the Debtor without cause or reason.

20.     Upon information and belief, Defendant has never paid the Debtor the

$198,000 ("Consulting Fee") owed to him under the terms of the Second Agreement.

## COUNT ONE:
## TURNOVER OF COMMISSION

21.     The Trustee repeats and realleges the allegations contained in paragraph 1

through 20 of this Complaint as though fully set forth herein.

22.     Upon information and belief, Defendant collected and retained the

Gravitas Investment on which a Commission of $500,000 is due. This Commission is property

of the estate pursuant to 11 U.S.C. §541(a)(1).

5

C046038/0197755/1357653.5

23.    Upon information and belief, Defendant has failed to turn over the Commission to the Trustee or to cause it to be turned over to the Trustee, despite the Defendant's actual knowledge of the pendency of the Debtor's bankruptcy case.

24.    Upon information and belief, pursuant to section 542(a) of the Bankruptcy Code, the Defendant is required to turn over the Commission to the Trustee.

25.    Upon information and belief, pursuant to section 542(b) of the Bankruptcy Code, the Trustee is entitled to an order and/or judgment ordering the Defendant to turn over, to the Debtor's estate, the entire $500,000 amount of the Commission that is due to Debtor, together with interest thereon.

## COUNT TWO:
## TURNOVER OF CONSULTING FEE

26.    The Trustee repeats and realleges the allegations contained in paragraph 1 through 25 of this Complaint as though fully set forth herein.

27.    Defendant and the Debtor entered into a valid and enforceable agreement which provided that the Defendant would pay the Debtor $198,000 as a Consulting Fee. This Consulting Fee is property of the estate pursuant to 11 U.S.C. §541(a)(1).

28.    Upon information and belief, Defendant has failed to turn over the Consulting Fee to the Trustee or to cause it to be turned over to the Trustee, despite the Defendant's actual knowledge of the pendency of the Debtor's bankruptcy case.

29.    Upon information and belief, pursuant to section 542(a) of the Bankruptcy Code, the Defendant is required to turn over the Consulting Fee to the Trustee.

30    Upon information and belief, pursuant to section 542(b) of the Bankruptcy Code, the Trustee is entitled to an order and/or judgment ordering the Defendant to turn over to

the Debtor's estate, the $198,000 of the Consulting Fee that is due to Debtor, together with interest and attorneys' fees pursuant to Section IV (D) of the Second Agreement thereon.

## COUNT THREE:
## BREACH OF CONTRACT FOR
## FAILURE TO PAY THE COMMISSION TO TRUSTEE

31. The Trustee repeats and realleges the allegations contained in paragraph 1 through 30 of this Complaint as though fully set forth herein.

32. Pursuant to the First Agreement, the Defendant was obligated to pay to the Debtor the Commission.

33. In breach of its obligations under the First Agreement, Defendant did not pay the Commission to the Debtor.

34. The Debtor has been injured by the Defendant's failure to pay the Commission in the amount of $500,000, together with interest thereon.

35 Accordingly, the Trustee is entitled to a judgment for money damages against Defendant in the amount of $500,000, together with interest thereon.

## COUNT FOUR:
## BREACH OF CONTRACT FOR
## FAILURE TO PAY THE CONSULTING FEE TO TRUSTEE

36 The Trustee repeats and realleges the allegations contained in paragraph 1 through 35 of this Complaint as though fully set forth herein.

37 Pursuant to the Second Agreement, the Defendant was obligated to pay to the Debtor the Consulting Fee.

38 In breach of the Second Agreement, the Defendant purportedly terminated the Debtor without cause or reason and failed to pay any of the Consulting Fee to the Debtor.

C046038/0197755/1357651.5

3'9.    The Debtor has been injured by the Defendant's failure to pay the

Consulting Fee in an amount of $198,000.

4').    Accordingly, the Trustee is entitled to a judgment for money damages

against Defendant in the amount of $198,000, together with interest and attorneys' fees pursuant

to Section IV (D) of the Second Agreement thereon.

WHEREFORE, the Trustee demands judgment, as follows:

1    On Count One, an order and/or judgment ordering Defendant to turn over

to the Trustee on behalf of the Debtor's estate, the $500,000 Commission; together with interest

thereon;

2    On Count Two, an order and/or judgment ordering Defendant to turn over

to the Trustee on behalf of the Debtor's estate, the $198,000 amount of the Consulting Fee,

together with interest and attorneys' fees thereon;

3.    On Count Three, an order and/or judgment awarding the Trustee money

damages for breach of contract from Defendant, in the amount of $500,000, together with

interest thereon;

4.    On Count Four, an order and/or judgment awarding the Trustee money

damages for breach of contract from Defendant, in the amount of $198,000, together with

interest and attorneys' fees thereon; and

5.    For such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
        January 24, 2007


BRYAN CAVE LLP


By:    /s/ Robert A. Wolf
       Robert A. Wolf (RW-3419)

C046038/0197755/1357653.5

02/06/2007 09:09 FAX   7812703280          UTIX                    ☑ 013/024

Benson V. Martin (BM-8897)
1290 Avenue of the Americas
New York, New York 10104
(212) 541-2000 (phone)
(212) 541-1340 (fax)
*General Counsel for Plaintiff Robert*
*L. Gelizer, as Chapter 7 Trustee of*
*Howard P. Effron*

TO:

Utix Group, Inc.
7 New England Executive Park, Suite 610
Burlington, Massachusetts 01803
*Defendant*

C046038/0197755/1357653 5

02/06/2007 TUE 09:27 [TX/RX NO 6078] ☑ 013

02/06/2007 09:09 FAX  7812703280          UTIX                              ☒ 014/024

# EXHIBIT A



## Corporate Sports Incentives

April 25, 2003

Mr. Howard Effron
Competent Consultants
123 East 54ᵗʰ Street, Apt. 4D
New York, NY 10022

Re: Corporate Sports Incentives, Inc.

Dear Howard,

This letter outlines the fee arrangement for direct assistance with the capitalization of Corporate Sports Incentives, Inc.

Retainer:        $20,000   Paid in four installments monthly beginning May 2003

Success Fee:     10% of all capital placed with CSI (less retainer offset of $20,000)

Warrants/Options:   3% - 4% of fully diluted stock at time of total capital raise ($3,600,000) to be awarded from management and board options or warrants at investor or management price with minimum 4 year expiration period.

It is generally understood that CSI shall make all records and counsel (legal and accounting) available as required and in good form per standard due diligence procedures. The CEO, Tony Roth, shall make himself available as required for presentations and follow-up meetings throughout the process.

The terms above are valid through September 1, 2003 and all transactions must obtain Board of Director approval and therefore subject to CSI's at-will approval prior to execution.

Anthony G. Roth
President & CEO

170 Cambridge Street Burlington, MA 01803-2933

(800) 627-7547 TEL   •   (781) 229-2589 TEL   •   (781) 229-8826 FAX

# EXHIBIT B

02/06/2007 03.09 FAX  7812703280             UTIX                    Ø 017/024

(1)  $20,000 retainer obligation
     eliminated and considered
     Satisfied

(2)  New Contract to raise
     3,000,000 to 5,000,000 for
     Utix Corporation on Etron's
     normal terms to be
     codified by a contract

(3)  New contract to have a
     retainer of $30,000 to be
     paid on a basis satisfactory to
     Utix Corporation and
     $30,000 worth of stock.
     to be effective on January 1, 2004

02/06/2007 09:09 FAX  7812703280        UTIX                                    ☑018/024

# EXHIBIT C

27/2005 18 (1 FAX   5135 325

**COMPETENT CONSULTANTS, LTD.**
123 East 54th Street
New York, New York 10022
(212) 593-4779

June 1, 2005

UTIX Group, Inc.
170 Cambridge Street
Burlington, Massachusetts 01803

Re:   Consulting Agreement Between
Utix Group, Inc. and Competent Consultants, Ltd. and Howard Effron

Gentlemen:

Competent Consultants, Ltd., on behalf of itself and its principal Howard Effron (collectively, "Consultant"), is pleased to submit this letter of engagement (the "Agreement") setting forth the terms and conditions whereby Consultant will act on a non-exclusive basis as a financial advisor and consultant for Utix Group, Inc., a Delaware corporation (together with any of its subsidiaries, hereinafter referred to as "Utix", or the "Company").

I.   **Services To Be Provided**

Consultant will endeavor, on a best-efforts basis, to assist and advise the Company in identifying and making introductions of the Company to qualified accredited (within the meaning of Rule 144 promulgated under the Securities Act of 1933, as amended) investors willing to purchase Company securities (collectively, "Investors") or to recognized investment banking firms or placement agents (collectively, "Agents"), in each case, with a view toward providing one or more "Financings" (as hereinafter defined) to the Company.

Attend to the above services and during the terms of the Agreement, and at the request of the Company, Consultant will be prepared to:

A)   Expend time and effort required to introduce and make meaningful numbers of Investors or Agents available to meet with the Company or its officers or directors for consideration of Financing(s); and

B)   Arrange for meaningful introduction to investment bankers, broker dealers and market makers for assistance with stock coverage and trading support for the Company's publicly traded securities.

As used in this Agreement, the term "Financing(s)" means and includes:

(a)     one or more sales and placements of common stock, preferred stock, notes, debentures, options or warrants of the Company, whether in exchange for cash, securities, properties, earn-outs, assumption of liabilities, covenants not to compete and other payments based on future events; or

(b)     any direct financial benefits derived by the Company through letters of credit, standby letters of credit, credit insurance, and other types of third party guarantees used to secure indebtedness or otherwise (regardless of whether any underlying indebtedness is repaid thereby);

all as shall be directly or indirectly (through one or more Agent) introduced to the Company by Consultant and as shall mutually agreed upon between the Company and the Investor(s) providing such Financing(s).

## II.    Effective Date and Right to Provide Services

The Company hereby grants Consultant the non-exclusive right to perform the Services on its behalf during the "Term of this Agreement" (defined below). Notwithstanding the foregoing, the type of Financing(s) and the terms and conditions of any one or more Financing(s) shall be established solely by the Company and its board of directors, and the Consultant shall have no right or authority, whether under this Agreement or otherwise, to establish or negotiate any such Financing terms or to otherwise bind the Company to any actual or proposed Financing(s). In no event shall Consultant hold itself or himself out as an authorized agent or representative of the Company capable of binding the Company to any proposal or commitment of any kind.

The "Term of this Agreement" shall commence as of June 1, 2005 (the "Effective Date") of this Agreement and shall continue thereafter for a period of three (3) years ending thirty-six (36) months from such Effective Date (the "Expiration Date"). The Company may terminate this Agreement prior to the Expiration Date in the event of the death or permanent disability of Howard Effron; "permanent disability" being defined as the inability of Howard Effron to perform services hereunder for 90 days or more.

## III.   Compensation/Payment For Services

In consideration for the services provided and to be provided by Consultant during the Term of this Agreement, the Company and Consultant hereby agree that the Consultant, shall be compensated as follows:

A)    Base Fee.    The Company shall pay Consultant an annual base consulting fee of $66,000.00 (the "Base Fee"); which Base Fee shall be payable in thirty-six (36) equal monthly installments of $5,500 each, commencing on the first day of the calendar month immediately following the Effective Date and on the first day of each calendar month thereafter

2

02/06/2007 09:10 FAX  7812703280                UTIX                                          ☑ 021/024

until May 31, 2008. In addition, on a date when the Company shall have received net proceeds of $2.0 million or more from any one or more financings of equity or convertible debt securities, the Consultant shall be entitled to receive a $30,000 cash bonus.

B)    Expense Reimbursement.    The Company shall separately reimburse Consultant on a monthly basis for all travel, meals, entertainment, and extraordinary expenses incurred by Consultant in performing duties on behalf of the Company. All expenses incurred by Consultant with approval from the Company shall be reimbursed quarterly and shall not exceed $1,000 per quarter, unless agreed upon in advance in writing by the Company.

C)    Warrants.    On the Effective Date of this Agreement, the Company shall issue to the Consultant 100,000 shares of Common Stock at a price of $0.01 per share.

D)    Finders Fee.    Subject to and conditioned, at all times, upon the completion by the Company of one or more Financing(s) during the Term of this Agreement or within one (1) year following the earlier to occur of the Expiration Date of the Term of this Agreement or the permitted early termination of this Agreement, in either case, from an Investor introduced to the Company by the Consultant or through an Agent (other than Gravitas LLC) introduced to the Company by the Consultant, then the Consultant shall receive, upon consummation of any one or more of such Financing(s):

    (i)    a cash finders' fee equal to ten percent (10%) of the gross amount of such Financing and

    (ii)   an award of mutually agreed upon warrants, not to exceed ten percent (10%) of the number of shares of Company common stock or common stock equivalents sold by the Company in such Financing(s).

Notwithstanding anything to the contrary, express or implied, contained in Clause D of this Article III or elsewhere in this Agreement, in the event and to the extent that the Company shall be required to pay any brokerage, underwriting or placement agent discounts or commissions, finders fees or other compensation (whether in the form of cash, securities or any combination) to any Agent or any officer, employee, associate or affiliate of any Agent introduced to the Company directly or indirectly by or through the Consultant (collectively, "Agency Fees"), any fees or compensation payable to the Consultant under this Agreement shall, at all times, be net of, and after payment of, any and all such Agency Fees. For the avoidance of doubt, if, for example, the Company shall be required in

3

connection with a subsequent Financing to pay Agency Fees of 8% to an Agent introduced directly or indirectly by or through the Consultant, the maximum finder's fee payable to the Consultant in respect of such Financing would be 2%.

Notwithstanding anything to the contrary, express or implied, contained in Clause D of this Article III or elsewhere in this Agreement, in no event shall the Company be obligated to pay the Consultant any finder's fee or other compensation with respect to any securities it may sell through the efforts of Gravitas, LLC.

IV.   Miscellaneous

A)    *Authority.*  The Company represents and warrants that the Company is in all respects qualified and authorized to complete any one or more Financing transactions acceptable to it. Consultant is not responsible for the qualifications of the Company, the vesting or quality of title or any other matters' affecting the consummation of any transaction or Financing.

B)    *Company Information.*  The Company represents and warrants that all information (a) made available to Consultant by the Company or (b) contained in any offering documents (the "Documents") will, at all times during the period of the engagement of Consultant hereunder, be complete and correct in all material respects and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in the light of the circumstances under which such statements are made.  The Company further represents and warrants that any projections provided to Consultant or contained in the Documents will have been prepared in good faith and will be based on assumptions that, in light of the circumstances under which they are made, are reasonable.  The Company acknowledged and agrees that, in rendering its services hereunder, Consultant will be using and relying on such information (and additional information available from public or other sources) without independent verification, that Consultant will not assume responsibility for the accuracy or completeness of such information (including in the Documents or otherwise), and that Consultant will not undertake to make an independent appraisal of any of the assets of the Company or any of its subsidiaries.

C)    *Indemnification.*  Both Consultant and the Company agree to indemnify and hold harmless the other party, and any company controlling the other party, or controlled by the other party, and their respective officers, agents and employees to the full extent lawful, from and against any losses, claims, damages or liabilities (including reasonable counsel fees) related to or arising out of this agreement or in connection with a financing and to reimburse the party entitled to be indemnified hereunder for all reasonable expenses (including reasonable counsel fees) as may be

4

incurred by such party in connection with investigating, preparing or defending any such action or claim; provided, however, that the parties shall not indemnify and hold harmless each other or any such other person for any liability attributable to the other party's or such other person's breach of the obligations hereunder.

D)    *Collection Costs.* If any consideration due to Consultant is not fully paid or transferred when due, the Company agrees to pay all costs of collection, including but not limited to attorney's fees and interest on the obligation, whether collected by suit or otherwise. The Engagement Retainer, Monthly Retainers, and other cash fees and stock consideration are not negotiable and are not subject to any reduction, set-off, counterclaim, or refund for any reason or matter whatsoever.

E)    *Not a Broker Dealer.* The Company understands that Consultant is not a registered broker-dealer, that Consultant's activities on the Company's behalf in connection with any financing will be limited to the payment of finder's fees to Consultant for its identification of prospective broker-dealers and other financing sources, and that Consultant has not been engaged to effect any transaction with respect to the Company's securities for the Company or others.

F)    *Confidentiality.* Except as contemplated by the terms hereof or as required by applicable law, Consultant shall keep confidential all material non-public information provided to it by the Company, and shall not disclose such information to any third-party, other than such of its employees and advisors as Consultant determines to have a need to know and except as otherwise required by law or legal process. The Documents and any other information or data about the Company, its subsidiaries, or their agents will only be made available to a potential investor on the execution of a confidentiality agreement prepared by the Company.

G)    *Nature of Engagement.* Consultant is being retained to serve as financial advisor to the Company, and the engagement of Consultant shall not be deemed to be on behalf of and is not intended to confer rights or benefits on any shareholder or creditor of the Company or its subsidiaries or on any other person. Unless expressly agreed to in writing by Consultant, no one other than the Company is authorized to rely on this engagement of Consultant or any statements, conduct or advice of Consultant. No opinion or advice of Consultant shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose, nor shall any public or other references to Consultant (or to such opinions or advice) be made without the express prior written consent of Consultant, which consent shall not be unreasonably withheld.

H)    *Parties.* This Agreement shall be binding on the parties and their

5

successors and assigns.

I)   *Modifications and Amendments.* The Agreement represents the entire understanding between the Company and Consultant with respect to the Financing, and all prior discussions are merged herein.   It is understood that Consultant's obligations under this Agreement are to use its best efforts throughout the period for which it acts as the Company's exclusive agent as described herein.   Consultant's engagement is not intended to provide the Company or any other person or entity with any assurances that any transaction will be consummated.   This Agreement may not be amended or modified except pursuant to a writing signed by all parties.

J)   *Governance.* This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

K)   *Termination of Prior Agreement.* This Agreement supersedes in its entirety the consulting agreement between the Company and the Consultant, dated June 30, 2006 (the **"Prior Agreement"**); which Prior Agreement is hereby rendered null and void as of the Effective Date of this Agreement.

If the foregoing accurately reflects the substance of our mutual agreement and understanding, please so indicate by executing and returning a copy of this Agreement in the space provided below.

Very truly yours,

COMPETENT CONSULTANTS, LTD.

By:

Howard Effron, President

HOWARD EFFRON

Accepted and agreed to as
of this ___ day of June 2005:

UTIX GROUP, INC.

By: Anthony G. Roth
Title: President & CEO

6

```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
In re:                              : Chapter 7
     HOWARD P. EFFRON,              :
                                    :
                    Debtor.         : Case  05-46742 (PCB)
                                    :
_____X
ROBERT L. GELTZER, as Chapter 7    : Adversary Pro. No. 07-01292 (PCB)
Trustee of HOWARD P. EFFRON,       :
                                    :
                    Plaintiff,     : ANSWER AND DEFENSES
                                    :
          - against -               :
                                    : JURY TRIAL DEMANDED
UTIX GROUP, INC.,                   :
                                    :
                    Defendant.     :
-----------------------------------X
```

Defendant Utix Group, Inc. ("Utix"), by its attorneys, Hodgson Russ LLP, for its answer to plaintiff's complaint (the "Complaint"), states as follows:

1.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Complaint, except denies that it did not pay funds that rightfully belong to the Debtor's estate.

2.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Complaint.

3.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 of the Complaint.

1

4.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 of the Complaint.

5.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint.

6.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the Complaint.

7.    Admits, with respect to the allegations in paragraph 7 of the Complaint, that Utix maintains an office in New York County.

8.    Admits, with respect to the allegations in paragraph 8 of the Complaint, that Utix was formerly known as Corporate Sports Incentives, Inc., that it does and transacts business in New York State, that its principal place of business is in Massachusetts, but denies that it is a domestic corporation.

9.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 of the Complaint.

2

10.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 of the Complaint.

11.    Denies each and every allegation in paragraph 11 of the Complaint, except so much thereof as alleges that Utix, then known as Corporate Sports Incentives Inc., issued a letter dated April 25, 2003, and refers to the letter for its true, correct and complete contents.

12.    Denies each and every allegation in paragraph 12 of the Complaint, except so much thereof as alleges that Utix issued a letter dated April 25, 2003, and refers to the letter for its true, correct and complete contents, and except that it admits that Utix made payments to Debtor.

13.    Denies each and every allegation in paragraph 13, except admits that Utix was introduced to Gravitas by Debtor.

14.    Denies each and every allegation in paragraph 14 of the Complaint.

15.    Denies each and every allegation in paragraph 15 of the Complaint.

16.    Denies each and every allegation in paragraph 16 of the Complaint, except so much thereof as alleges that Utix signed a letter agreement dated June 1, 2005 and refers to the agreement for its true, correct and complete contents.

17.   Denies each and every allegation in paragraph 17 of the Complaint, except so much thereof as alleges that Utix signed a letter agreement dated June 1, 2005 and refers to the agreement for its true, correct and complete contents.

18.   Denies each and every allegation in paragraph 18 of the Complaint, except admits that Utix was introduced to Sunrise, Inc. by Debtor.

19.   Denies each and every allegation in paragraph 19 of the Complaint, except admits that the Debtor's services were terminated.

20.   Denies each and every allegation in paragraph 20 of the Complaint.

21.   Utix repeats and realleges its answers to the allegations contained in paragraphs 1 through 20 of the Complaint, as though fully set forth herein.

22.   Denies each and every allegation in paragraph 22 of the Complaint.

23.   Denies each and every allegation in paragraph 23 of the Complaint.

24.   Denies each and every allegation in paragraph 24 of the Complaint.

25.   Denies each and every allegation in paragraph 25 of the Complaint.

4

26.  Utix repeats and realleges its answers to the allegations contained in paragraphs 1 through 25 of the Complaint, as though fully set forth herein.

27.  Denies each and every allegation in paragraph 27 of the Complaint, except so much thereof as alleges that Utix signed a letter agreement dated June 1, 2005 and refers to the agreement for its true, correct and complete contents.

28.  Denies each and every allegation in paragraph 28 of the Complaint.

29.  Denies each and every allegation in paragraph 29 of the Complaint.

30.  Denies each and every allegation in paragraph 30 of the Complaint.

31.  Utix repeats and realleges its answers to the allegations contained in paragraphs 1 through 30 of the Complaint, as though fully set forth herein.

32.  Denies each and every allegation in paragraph 32 of the Complaint.

33.  Denies each and every allegation in paragraph 33 of the Complaint.

34.  Denies each and every allegation in paragraph 34 of the Complaint.

35.   Denies each and every allegation in paragraph 35 of the Complaint.

36.   Utix repeats and realleges its answers to the allegations contained in paragraphs 1 through 35 of the Complaint, as though fully set forth herein.

37.   Denies each and every allegation in paragraph 37 of the Complaint.

38.   Denies each and every allegation in paragraph 38 of the Complaint.

39.   Denies each and every allegation in paragraph 39 of the Complaint.

40.   Denies each and every allegation in paragraph 40 of the Complaint.

## FIRST AFFIRMATIVE DEFENSE

41.   The Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

42.   Plaintiff is barred from recovery because of the failure of a condition precedent to any payment obligations between Debtor and Utix.

## THIRD AFFIRMATIVE DEFENSE

43.   Plaintiff's claims are barred by the principles of accord and satisfaction.

6

## FOURTH AFFIRMATIVE DEFENSE

44.  Plaintiff is barred from recovery by the doctrines of waiver, estoppel and laches.

## FIFTH AFFIRMATIVE DEFENSE

45.  Plaintiff is barred from recovery because Debtor was terminated.

## SIXTH AFFIRMATIVE DEFENSE

46.  Plaintiff's claims are barred because of Debtor's failure of performance.

## SEVENTH AFFIRMATIVE DEFENSE

47.  Plaintiff's claims are barred by the statute of frauds.

## EIGHTH AFFIRMATIVE DEFENSE

48.  Debtor received all the compensation to which he may have been entitled.

## <u>NINTH AFFIRMATIVE DEFENSE</u>

49.  Any damages allegedly claimed are the result of Debtor's own actions or inaction for which Utix is not responsible.

Defendant demands a jury trial on all triable issues in this proceeding before the United States District Court and not before the Bankruptcy Court.

**WHEREFORE**, Utix hereby demands judgment against the plaintiff:

a)   dismissing plaintiff's complaint against Utix with prejudice and,

b)   granting Utix such other and further relief as the Court in its discretion may deem just and proper.

Dated:   New York, New York
         March 2, 2007

                    HODGSON RUSS LLP


                    By: __s/Mark A. Harmon_____
                        Mark A. Harmon, Esq. (MH 9126)
                        S. Robert Schrager (RS 0952)
                        *Attorneys for Defendant*
                        Utix Group, Inc.
                        1540 Broadway, 24th Floor
                        New York, NY 10036
                        (212) 751-4300

8

**HODGSON RUSS LLP**
1540 Broadway
New York, NY 10036
212.751.4300
S. Robert Schrager (RS0952)
Mark A. Harmon (MH 9126)
*Attorneys for Defendant Utix Group, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re*:<br><br>    **HOWARD P. EFFRON,**<br><br>                        *Debtor* | Case No. 05-46742 (PCB)<br>(Chapter 7) |
| **ROBERT L. GELTZER,  as Chapter 7 Trustee of**<br>**Howard P. Effron,**<br><br>                        *Plaintiff,*<br><br>     –against–<br><br>**UTIX GROUP, INC.,**<br><br>                        *Defendant.* | Adversary Proc. No.<br>    07-01292 (PCB) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF**
**DEFENDANT UTIX GROUP, INC. FOR AN ORDER**
**WITHDRAWING THE BANKRUPTCY REFERENCE**
**PURSUANT TO 28 U.S.C. § 157(D)**

       Defendant Utix Group, Inc.  ("Utix") submits this Memorandum of Law in

support of its motion for an order, pursuant to 28 U.S.C. § 157(d), withdrawing the reference of

the above-captioned adversary proceeding from the United States Bankruptcy Court for the

Southern District of New York (the "Bankruptcy Court") so that the proceeding may continue in

the United States District Court for the Southern District (the "District Court").

The complaint asserts four counts against Utix. All of the counts are based on alleged pre-petition acts of breach of contract. The first two counts of the complaint seek a turn over of monies allegedly due to the debtor pursuant to two agreements pursuant to Section 542 (b) of the Bankruptcy Code; the second two counts alternatively seek judgment awarding damages for breach of the contracts. Thus, these claims involve legal claims with monetary damages sought, and pursuant to the Seventh Amendment of the United States Constitution, Utix is entitled to a jury trial. Bankruptcy Courts do not have the authority to preside over jury trials without consent of all parties. Here, Utix has not consented.

In addition, because two of the claims are non-core and since the District Court would be required to review de novo the Bankruptcy Court's proposed findings of fact and conclusions of law, withdrawal of the Order of the Reference is warranted to avoid the consumption of resources and inefficiency which would otherwise occur as a result of such de novo review. For these reasons, just cause exists for the District Court to withdraw the Order of Reference to the Bankruptcy Court. All of the counts are based on the same facts and the discovery will be identical for all of the causes of action. Accordingly, in the interest of judicial economy and the conservation of the parties' and Courts' resources, the entire Order of Reference for the above captioned proceeding should be withdrawn.

## THE COMPLAINT

Plaintiff, Robert L. Geltzer, Chapter 7 trustee in this proceeding (the "Trustee"), has commenced an adversary proceeding against Utix asserting, essentially, that Utix breached two agreements between it and the Debtor, Howard P. Effron (the "Debtor"). A copy of the Complaint is annexed to the accompanying certification as Exhibit A. The Complaint alleges that Utix failed to pay certain commissions and consulting fees claimed to be owed to the Debtor

2

(Complaint ¶¶ 15 and 20). The Complaint demands either an order that Utix turn over these payments pursuant to Section 542 (b) of the Bankruptcy Code (Complaint, Counts 1 and 2) or, alternatively, judgment awarding damages for breach of contract (Complaint, Counts 3 and 4).

As is shown herein, Utix' motion to withdraw the reference to the Bankruptcy Court should be granted on the ground that Utix is entitled to a jury trial by an Article III judge on the issues raised in this adversary proceeding and does not consent to a jury trial before the bankruptcy judge.

**ARGUMENT**

**THE DISTRICT COURT SHOULD WITHDRAW THE
REFERENCE OF THIS ADVERSARY PROCEEDING TO THE
BANKRUPTCY COURT**

In this action the Trustee seeks to establish that the Utix breached certain

agreements between Utix and the Debtor and, thus, claims that the Debtor is entitled to recover

monies allegedly owed to him.

While the claim to turn over certain property of the estate is a "core" proceeding.

28 U.S.C. § 157(b)(2)(E),   the Bankruptcy Court may hear, but not determine, the related state

law breach of contract claims.  28 U.S.C. §157(c)(1).  However, there can be no dispute that

Defendant is entitled to a jury trial on the claims asserted against it. *Granfinanciera, S.A. v.*

*Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

There is no dispute that Defendants has demanded a jury trial, but not before the

Bankruptcy Court.[1]  Consequently, the District Court should withdraw the reference of this

adversary proceeding to the Bankruptcy Court pursuant to 28 U. S. C. §1334(a), 157(d) and

157(e) and Rule 5011(a) of the Federal Rules of Bankruptcy Procedure.  Absent Utix' consent to

a jury trial before a non-Article III tribunal, the Bankruptcy Court lacks jurisdiction to conduct

the jury trial required here.

In response to the Supreme Court's decision in *Northern Pipeline Construction*

*Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which

defined the constitutional limitations on Congress' original jurisdictional grant to bankruptcy

---

[1] See Exhibit B to the accompanying certification.

courts, Congress adopted 28 U.S.C. § 157, which redefined the bankruptcy court's jurisdictional

powers. In *Marathon*, the Supreme Court distinguished "the restructuring of debtor-creditor

relations, which is at the core of the federal bankruptcy power," from the "adjudication of state

created private rights". *Id.*, 458 U.S. at 71, 102 S.Ct. at 2871. 28 U.S.C. § 157 addresses the

constitutional limitations outlined in *Marathon* by classifying matters as either "core," which the

Bankruptcy Court may "hear and determine" and "enter appropriate orders and judgments" (see

§ 157(b)(1)), or "non-core proceedings," which the Bankruptcy Court may hear, but absent the

consent of all parties, may only "submit proposed findings of fact and conclusions of law to the

district court" which has *de novo* review powers. See, § 157(c)(1); *In re Orion Pictures Corp.*, 4

F.3d 1095, 1100-01 (2d Cir. 1993); *In re Cinematronics*, 916 F.2d 1444, 1450-51 (9th Cir.

1990).

Because the District Court has original and exclusive jurisdiction of all

bankruptcy matters which it has referred to the Bankruptcy Court in the first instance pursuant to

28 U.S.C. § 157(a), the District Court may "withdraw, in whole or in part, any case or

proceeding . . . on its own motion or on timely motion of any party, for cause shown." 28 U.S.C.

§ 157(d). Section 157(d) does not define "cause," although it is clear that the District Court has

discretion in determining whether cause for withdrawal of the reference has been shown in a

particular instance. See, *In re Cinematronics*, 916 F.2d at 1451 (where a jury trial is demanded

"the refusal to withdraw the referral to the bankruptcy court is an abuse of discretion").

In view of 28 U.S.C. § 157(e) (as amended October 22, 1994), requiring the

"express consent of all the parties" to conduct a jury trial in a bankruptcy court, it is submitted

that where, as here, a litigant has a jury trial right and has withheld its consent to a jury trial in

the Bankruptcy Court, the refusal to withdraw the referral to the Bankruptcy Court would be, as

in *Cinematronics,* an abuse of discretion.

**A.    Utix is Entitled To A Jury Trial
        On The Issues Raised In The Adversary Proceeding**

          The Supreme Court in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct.

2782, 106 L.Ed.2d 26 (1989), held that under the Seventh Amendment a person who has not

submitted a claim against the bankruptcy estate (and thus has not impliedly consented to the

bankruptcy court's equity jurisdiction) has the right to a jury trial with respect to common law

claims such as the breach of contract claims asserted at bar.  For example, in *Granfinanciera,*

notwithstanding that Congress has designated fraudulent conveyance actions as core

proceedings, 28 U.S.C. § 157(b)(2)(H), similar to the turn over claim asserted here, the Supreme

Court held that an action to recover a fraudulent conveyance was an action at law and that

"[u]nless Congress may and has permissibly withdrawn jurisdiction over that action by courts of

law and assigned it exclusively to non- Article III tribunals sitting without juries, the Seventh

Amendment guarantees petitioners a jury trial upon request." *Id.*, 49 U.S. at 49, 109 S.Ct. at

2794. The Supreme Court went on to observe that Congress can only place adjudication of

"public rights" beyond the Seventh Amendment, not "private rights" which more accurately

characterize a fraudulent conveyance action. *Id.*, 492 U.S. at 53-55, 109 S.Ct. at 2796-2797.

Thus, the Supreme Court concluded that Congress could not eliminate a party's Seventh

Amendment right to a jury trial on a fraudulent conveyance claim simply by designating the

action a "core matter" to be heard by a non-Article III court. *Id.*, 49 U.S. at 61, 109 S.Ct at 2800.[2]

---

[2]  The Supreme Court, however, in *Granfinanciera,* expressly declined to rule on the constitutionality of the
bankruptcy court conducting a jury trial in a fraudulent conveyance suit brought by a trustee against a person who has not filed a
claim against the estate. 492 U.S. at 50, 109 S.Ct. at 2794-2795.

Based upon the above, there is no question that Utix is entitled to a jury trial on the breach of contract claims and the related turn over issues raised in this adversary proceeding. These claims are a quintessential private right of action as to which any litigant has a constitutional right to a jury trial. *Id.*, 492 U.S at 55-59, 109 S.Ct. at 2797-2799; *Langenkamp v. Culp,* 498 U.S. 42, 45, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990). Certainly, no proof of claim has been filed by Utix and, indeed, nothing has been done by Utix which can be construed as express or implied consent to the Bankruptcy Court's exercise of plenary jurisdiction over the Trustee's claims. *In re Mindeco Corp.,* 212 B.R. 447 (E.D.N.Y. 1997); *In re J.T. Moran Financial Corp.*, 124 B.R. 931 (S.D.N.Y. 1991). Nor is there any issue that this motion is timely, since it is being made in accordance with this Court's individual rules before the expiration of the time to answer or otherwise move in respect of the complaint and nothing otherwise has happened in the case. *In re New York Trap Rock Corp.*, 158 B.R. 574 (S.D.N.Y. 1993).

B.    **The Bankruptcy Court Is Without Jurisdiction To Conduct A Jury Trial Without The Consent Of All The Parties**

By the 1994 amendment to 28 U.S.C. § 157, Congress was mindful of the Supreme Court's strong suggestion in *Granfinanciera*—although it specifically avoided holding—that fraudulent conveyance and voidable preference actions are private-right claims which must be tried under the auspices of an Article III court, and, therefore, required the consent of the parties as a prerequisite to jury trials in bankruptcy courts. The 1994 amendment added subsection (e) to Section 157, which provides:

> (e) If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

7

28 U.S.C. § 157(e).6 4 See, *In re Omni Capital Group, Ltd.* 158 B.R. 876, 878 (S.D. Fla. 1993).

Utix has made a jury trial demand but not before the Bankruptcy Court, and has expressly refused to consent to the conduct of a jury trial by the Bankruptcy Court. Accordingly, as Utix has withheld its consent to a jury trial before a non-Article III tribunal (the Bankruptcy Court), this matter must be tried in the District Court. See, *In re 610 W. 142 Owners Corp.*, 219 B.R. 363, 367 (Bankr. S.D.N.Y. 1998) (the "bankruptcy court may conduct jury trials in core matters, as long as all parties consent"); *In re Rocky Hunt,* 215 B.R. 505, 509 n. 5, 511 n. 7 (Bankr. W.D. Tx. 1997); See *In re Mindeco Corp.*, 212 B.R. at 449.

## CONCLUSION

Based upon the foregoing, Utis' motion for an order, pursuant to 28 U.S.C. § 157(d), withdrawing the reference of this adversary proceeding from the Bankruptcy Court so that the proceeding may continue in the District Court should be granted.

Dated:  March 2, 2007
         New York, New York

    s/S. Robert Schrager
S. Robert Schrager (RS 0952)
Mark A. Harmon (MH 9126)
**HODGSON RUSS LLP**
1540 Broadway
New York, NY 10036
212.751.4300

8